**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| MICA NOTZ,<br>　　　　*Plaintiff*,<br><br>　　v.<br><br>CONNECTICUT COMMISSION ON<br>HUMAN RIGHTS AND OPPORTUNITIES<br>*et al.*,<br>　　　　*Defendants*. | No. 3:19-cv-0769 (JAM) |

**ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff Mica Notz is a non-attorney advocate who has represented many people in administrative proceedings before the Connecticut Commission on Human Rights and Opportunities ("CHRO") as well as before the U.S. Equal Employment Opportunity Commission ("EEOC"). Since 2016, the CHRO—on the advice of its principal attorney, Charles Krich—has refused to allow Notz to represent clients in CHRO proceedings.

Notz filed this federal lawsuit against the CHRO in 2019 alleging that the CHRO's refusal to allow her to represent clients in its proceedings violates state law and is also preempted by federal law. In February 2020, I granted the CHRO's motion to dismiss Notz's complaint because I concluded that there was no merit to her federal preemption claim, and I declined to exercise supplemental jurisdiction over her remaining state law claims. *See Notz v. CHRO*, 438 F. Supp. 3d 148 (D. Conn. 2020).

Notz has since filed an amended complaint against both the CHRO and Krich, alleging that their refusal to allow her to represent clients before the CHRO violates her federal constitutional rights to due process and equal protection, as well as other federal and state laws. I conclude that there is no plausible merit to Notz's federal claims, and I will once again decline to

1

exercise supplemental jurisdiction over Notz's remaining state law claims. Accordingly, I will grant defendants' motion for judgment on the pleadings.

## BACKGROUND

The following facts are set forth in Notz's second amended complaint. Doc. #45. Notz alleges that she is a "human resources professional" and non-attorney advocate who appeared before the CHRO and the EEOC for more than 20 years to represent the interests of both claimants and respondents. *Id*. at 2 (¶ 1). But in October 2016, Krich told Notz that non-attorney representatives would no longer be allowed to represent people before the CHRO. *Id*. at 4 (¶ 10). At that time, Notz was representing three vulnerable clients before the CHRO, and these clients would go without representation unless they could afford an attorney. *Ibid.* (¶ 11). Notz objected that the CHRO's new policy was inconsistent with Connecticut administrative regulations, but the CHRO refused to change its position. *Id.* at 4-6 (¶¶ 12-27).

In May 2017, the Connecticut Office of Chief Disciplinary Counsel informed Notz that she was under investigation for the unauthorized practice of law before the CHRO on the basis of a complaint filed by Krich. *Id*. at 6 (¶¶ 28-29, 31-32). She was told that she must immediately cease and desist from the illegal practice of law before the CHRO. *Ibid*. (¶ 34).[1]

For the next two years from May 2017 to April 2019, Notz continued to protest her inability to represent clients before the CHRO in a series of communications and meetings with

---

[1] Section 2-44A(a) of the Connecticut Practice Book defines the "practice of law" in general to mean "ministering to the legal needs of another person and applying legal principles and judgment to the circumstances or objectives of that person," and it expressly includes "[r]epresenting any person in a court, or in a formal administrative adjudicative proceeding or other formal dispute resolution process or in any administrative adjudicative proceeding in which legal pleadings are filed or a record is established as the basis for judicial review." § 2-44A(a)(4). The Practice Book provides an exception for "[a]cting as a lay representative" before administrative agencies or in administrative hearings but only if "[s]uch conduct is authorized by statute, or the special court, department or agency has adopted a rule expressly permitting and regulating such practice." § 2-44A(b)(2). The CHRO's regulations generally allow only for the representation of a complainant or respondent in a contested proceeding by an attorney. *See* Conn. Agencies Reg. §§ 46a-54-15a, 46a-54-82a.

the CHRO leadership and attorneys from the CHRO including Krich, as well as with the Office of Chief Disciplinary Counsel and with the Connecticut Attorney General's office. *Id.* at 7-13 (¶¶ 35-97).

Notz alleges that, due to defendants' actions, she "has suffered shame, scorn, ridicule, mistrust, and/or public opprobrium, wherein members of the public have been led to believe that [Notz] is an individual who is dishonest, corrupt, and unethical by acting in such a manner as to be committing felonious acts of illegally practicing law" and that she "has suffered emotional and financial harm and continues to do so." *Id.* at 13 (¶¶ 99-100). Although her business has suffered, she still represents clients before the EEOC in employment claims as well as before other Connecticut agencies. *Id.* at 1, 7 (¶¶ 39-40).

In May 2019, Notz filed this *pro se* federal lawsuit against the CHRO seeking declaratory and injunctive relief. Doc. #1. The initial complaint alleged six counts: five counts alleging violations of state law and one count claiming that the CHRO's action against Notz is preempted by federal law. In February 2020, I granted the CHRO's motion to dismiss on the ground that Notz had failed to allege plausible grounds for relief under the Supremacy Clause for her preemption claim and on the ground that I would decline to exercise supplemental jurisdiction over Notz's state law claims in the absence of a cognizable federal law claim. Doc. #31; *Notz v. CHRO*, 438 F. Supp. 3d 148 (D. Conn. 2020).

Following my order granting the CHRO's motion to dismiss, Notz moved for reconsideration and to reopen her case with an amended complaint. Doc. #33. I denied Notz's motion for reconsideration but granted her motion to reopen the case and file an amended complaint. Doc. #34. I also granted Notz's subsequent motion for leave to file a second amended complaint. Doc. #43.

Notz's second amended complaint adds Krich as a defendant, in his official and individual capacities, and once again seeks a declaratory judgment and injunctive relief. Doc. #45 at 32. It alleges eight counts, including the same five state law claims in Notz's initial complaint and the federal preemption claim that I have previously dismissed.[2] Count Seven alleges due process and equal protection violations under the Fourteenth Amendment. Doc. #45 at 29-30. Count Eight alleges violations of 42 U.S.C. § 1983 and possibly Title VII. *Id*. at 30-31.

Defendants move for judgment on the pleadings under Rule 12(c). Doc. #58. Notz opposes the motion, Doc. #63, and defendants have filed a reply, Doc. #68. I heard oral argument on August 25, 2020, and this ruling now follows.

## DISCUSSION

The background principles that govern a Rule 12(c) motion for judgment on the pleadings are well established. The Court must accept as true all factual matters alleged in a complaint and draw all reasonable inferences in favor of the non-moving party, although a complaint may not survive unless the facts it recites are enough to state plausible grounds for relief. *See, e.g., Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018).[3] Additionally, it is also well established that "*pro se* complaints must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013).

---

[2] Although Notz's amended complaint restates her preemption claim, I will not address it in this ruling. As I noted when I granted Notz's motion to reopen, "[b]ecause I have dismissed Notz's preemption claim, any answer or other response to the amended complaint need not acknowledge or address this claim." Doc. #34 at 3.

[3] Notz argues that defendants' motion "is premature and must be denied in its entirety" because "formal discovery has not occurred." Doc. #63-1 at 2. But that argument is incorrect: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Therefore, defendants' motion for judgment on the pleadings is timely.

*Procedural due process*

Notz alleges that defendants violated her constitutional due process right "to her occupation and to make a living." Doc. #45 at 29. The Fourteenth Amendment to the United States Constitution provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause of the Fourteenth Amendment protects both a right to "substantive" due process and "procedural" due process. *See County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998). A claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*).

Notz argues she holds a constitutionally protected interest to appear as a non-attorney advocate before the CHRO. Doc. #63-1 at 4, 7, 16-18. "[I]t is well established that 'the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment.'" *Hu v. City of New York*, 927 F.3d 81, 102 (2d Cir. 2019) (quoting *Conn v. Gabbert*, 526 U.S. 286, 291–92 (1999)). But that right "is subject to reasonable government regulation" and "[t]o prevail on such a claim, a plaintiff must allege facts suggesting that a defendant's conduct has operated as a complete prohibition on his ability to practice his chosen profession." *Id.* at 102–03 (cleaned up). Loss of "money, clients, and future business opportunities" are insufficient to state a plausible claim because "business losses alone do not implicate the Due Process right of occupational choice." *Id*. at 102.

Notz has not alleged facts to establish that she has been *completely* prohibited from working in her chosen profession as a human resources professional. To the contrary, her filings

in this action indicate that she still represents clients before the EEOC in employment claims as well as before other Connecticut agencies. *See* Docs. #15-5 at 5-6; #45 at 1, 7 (¶¶ 39-40); #63-1 at 13. While Notz alleges that she has suffered damage to her professional reputation and financial circumstances from no longer being able to appear before the CHRO as a non-attorney advocate, she has not alleged that she has been foreclosed from otherwise working as a human resources professional, or from finding other jobs in the field.

Nor has Notz identified any provision of state or federal law that grants her a right to or a constitutionally-recognizable interest in representing clients as a non-attorney advocate before the CHRO. A property interest subject to constitutional due process protections must be more than a hope or expectation for favorable governmental action but a clear and mandatory entitlement. "The procedural component of the Due Process Clause does not protect everything that might be described as a 'benefit': 'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire' and 'more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)); *see also Harrington v. County of Suffolk*, 607 F.3d 31, 34–35 (2d Cir. 2010) (same). Moreover, "[s]uch entitlements are not created by the Constitution but, '[r]ather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Id.* at 34 (quoting *Castle Rock*, 545 U.S. at 756).

Notz argues that "state agency rules and regulations unequivocally allow for [her] to provide advocacy services by virtue of the rights bestowed upon her to act in the role of non-attorney representative." Doc. #63-1 at 18. But I have reviewed the regulatory provisions that Notz references and they are, at most, ambiguous about whether non-attorneys may represent

clients before the CHRO.[4] For example, in various places related to the initial stages of the CHRO complaint process, the regulations refer to actions that can be taken by a complainant or respondent or their "representatives." *See, e.g.*, Conn. Agencies Regs. § 46a-54-55a(g)-(h). But the regulations do not suggest the term "representative" has a different definition than "legal representative" or "lawyer." None of the provisions that Notz references expressly state that non-attorney advocates are entitled to represent clients before the CHRO.

Likewise, the provisions of federal law that Notz relies on do not require the CHRO to allow non-attorney representation. As I have previously explained, the federal law provisions she references "say nothing about whether such charges and filings may be made by an attorney or non-attorney on behalf of such person. Such provisions (and other regulatory provisions cited by Notz that contemplate the filing of charges by some third party 'on behalf' of a complainant) do not show that federal law requires the CHRO to allow representation by non-attorneys." Doc. #34 at 2; *see also Notz*, 438 F. Supp. 3d at 152.[5]

Accordingly, Notz has not alleged facts or law to plausibly suggest that defendants have deprived her of any constitutionally protected liberty or property interest. Moreover, even if Notz were able to allege such a deprivation, she has not alleged facts to show that the procedures defendants followed violated her due process rights. Notz seeks a declaratory judgment that defendants' determination that she cannot appear before the CHRO is invalid. Doc. #45 at 1. As a state administrative agency, the CHRO is governed by the Uniform Administrative Procedure

---

[4] Specifically, Notz references Conn. Agencies Reg. §§ 46a-54-19a, 46a-54-55a, 46a-54-56a, and 46a-54-58a. Docs. #45 at 3-4 n.3; #63-1 at 7, 18. While it could be argued that the CHRO regulations create a right for a *client* with a claim before the CHRO to have a non-attorney representative appear before the CHRO at certain stages of the proceeding on their behalf, that is not what is at stake in this litigation because the regulations do not create a right that *Notz or another third party* can assert to appear before the CHRO as a non-attorney.

[5] Notz once again references two provisions of Title VII, 42 U.S.C. § 2000e-5(b) & (e)(1), as well as several EEOC regulations referencing filing complaints "on behalf of" another person, 29 C.F.R. §§ 1601.7, 1601.15, and 1601.24. Doc. #63-1 at 18.

Act ("UAPA"). *See* Conn. Gen. Stat. § 4-166 *et seq*. When a party petitions the CHRO, it may

"decide not to issue a declaratory ruling, stating the reasons for its action" without a hearing

under the UAPA, which is what the CHRO did in response to Notz's petition. Conn. Gen. Stat. §

4-176(e); Doc. #45 at 13 (¶ 97). If the CHRO declines to issue a declaratory ruling, "the

petitioner may seek in the Superior Court a declaratory judgment." Conn. Gen. Stat. § 4-175(a).

Notz has not availed herself of this process that is available to her in the state courts of

Connecticut. Instead, she has chosen to pursue this action in federal court. For these reasons,

Notz could not maintain a claim that her procedural due process rights were violated even if she

could establish that she was deprived of a liberty or property interest. Accordingly, I will grant

defendants' motion for judgment on the pleadings on Notz's procedural due process claim.

### *Substantive due process*

Although Notz's amended complaint does not explicitly allege a substantive due process

claim, her opposition argues that she has suffered a substantive due process violation. Doc. #63-1

at 29. In order to state a substantive due process claim, a plaintiff must allege that government

officials have deprived her of a fundamental constitutional right and that they have done so under

circumstances that are no less than "arbitrary" and "outrageous," typically as demonstrated by

conduct that "shocks the conscience." *See, e.g., County of Sacramento v. Lewis*, 523 U.S. at 846-

855 (describing the "shocks the conscience" standard); *United States v. Medunjanin*, 752 F.3d

576, 590 (2d Cir. 2014) (substantive due process has generally protected "matters relating to

marriage, family, procreation, and the right to bodily integrity"); *Natale v. Town of Ridgefield*,

170 F.3d 258, 262–63 (2d Cir. 1999) (substantive due process standards violated "only by

conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental

authority"). Notably, substantive due process "does not forbid governmental actions that might

fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit seeking review of administrative action." *Id.* at 263.

Notz's claims plainly do not rise to the level of shocking the conscience. It does not shock the conscience that Connecticut limits the authority of non-attorney representatives to engage in representational advocacy before Connecticut's state agencies. Rather, her allegations at most might support a claim that defendants have made an "incorrect" or "arbitrary" decision under state administrative law principles, not in a federal constitutional sense. Therefore, I will grant defendants' motion for judgment on the pleadings on Notz's substantive due process claim.

### Stigma plus due process

Notz alleges that she "holds a stigma plus claim in her liberty interest in her reputation which was infringed upon by the CHRO by a) imposing a tangible and material burden upon the Plaintiff; and 2) by utterance of a false statement during the declaratory hearing before the CHRO, which falsely accused her of engaging in the illegal practice of law and falsely asserting Plaintiff had engaged in fraudulent activity with a client, damaging Plaintiff's reputation in connection with the burdensome action of banning her non-attorney presentation before that agency." Doc. #45 at 30.

Generally, defamation is an issue of state law, not of federal constitutional law. *See Lauro v. Charles*, 219 F.3d 202, 207 (2d Cir. 2000). But federal constitutional relief is available for defamation committed by government officials if a plaintiff can demonstrate "a stigmatizing statement plus a deprivation of a tangible interest." *Algarin v. Town of Wallkill*, 421 F.3d 137, 138 (2d Cir. 2005). To establish such a "stigma plus" claim, a plaintiff must show (1) "the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false," and (2) "a material state-imposed burden

or state-imposed alteration of the plaintiff's status or rights." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (Sotomayor, J.) (cleaned up).

This state-imposed alteration of status or burden must be "in addition to the stigmatizing statement." *Ibid.* (emphasis omitted). "Thus, even where a plaintiff's allegations would be sufficient to demonstrate a government-imposed stigma, such defamation is not, absent more, a deprivation of a liberty or property interest protected by due process." *Ibid.* "Burdens that can satisfy the 'plus' prong under this doctrine include the deprivation of a plaintiff's property and the termination of a plaintiff's government employment." *Ibid.* (internal citations omitted).

Here, even if I assume that Notz has plausibly alleged that defendants made derogatory statements that damaged her reputation, Notz has not plausibly alleged a "plus" factor. Notz is not a government employee, and she has not plausibly alleged a deprivation of a liberty or property interest protected by due process for the reasons stated above. She cannot show a material state-imposed alteration in her status or rights because, notwithstanding prior practice, she has not shown that she had a predicate right to appear before the CHRO as a non-attorney advocate. At most, she has alleged negative effects on her reputation from Krich and the CHRO's actions, but "deleterious effects flowing directly from a sullied reputation, standing alone, do not constitute a 'plus' under the 'stigma plus' doctrine" *Ibid.* (cleaned up). Accordingly, I will grant defendants' motion for judgment on the pleadings on Notz's stigma plus claim.

### *Equal protection*

Notz alleges that the CHRO and Krich's "action of denying [her] the ability to compete in her profession by adhering to a strict 'attorney only' ruling, further deprived [her] of equal protection of the law." Doc. #45 at 29. "The Equal Protection Clause ... commands that no State

shall deny to any person within its jurisdiction the equal protection of law, which is essentially a direction that all persons similarly situated shall be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (internal quotations omitted). As the Supreme Court has recognized, "most laws differentiate in some fashion between classes of persons," and "[t]he Equal Protection Clause does not forbid classifications," but "simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).

Equal protection cases generally fall into one of two categories. If the governmental distinction targets a suspect class (such as a class of persons based on race, gender, or religion) or targets the exercise of a fundamental right (such as the right to vote), then the governmental classification will be subject to heightened or strict scrutiny. All other governmental classifications need only be supported by a rational basis. *See ibid.*; *Winston v. City of Syracuse*, 887 F.3d 553, 560 (2d Cir. 2018).

An equal protection claim generally requires allegations that a plaintiff was treated differently from others who were similarly situated, either to an "extremely high degree of similarity" or a "reasonably close resemblance," depending on the exact type of equal protection claim brought. *Hu*, 927 F.3d at 93 (internal quotations and citations omitted). Notz's amended complaint does not allege any comparators. In her opposition, she argues she has two potential comparators: non-attorney "[r]espondent business owners" who the CHRO continues to allow to participate in CHRO proceedings, and a business owner who received a declaratory ruling from the CHRO stating he could represent his business *pro se* before the CHRO. Doc. #63-1 at 31, 33-34. Neither of these comparators bears the level of resemblance to Notz needed under either theory for an equal protection claim. Non-attorney business owners acting on their companies'

11

behalf are not similarly situated to Notz because they are effectively parties to the action themselves, not representing others. Moreover, the specific case of a business owner representing his business *pro se* that Notz cites is drawn from a 2010 CHRO decision that predates the alleged policy change that Notz is now challenging. *See CHRO ex rel. Tracy A. Standard v. Esposito Design Associates, Inc.,* CHRO No. 08204451 (2010). Notz has not alleged with any specificity that the CHRO is currently treating any true comparators differently.

In any event, even if Notz could establish that she was treated differently from others who were similarly situated, her equal protection claim would not survive rational basis review. When a court is asked to decide if a governmental classification survives rational basis review, it considers solely whether there is "a purpose [that] may conceivably or may reasonably have been the purpose and policy of the relevant governmental decisionmaker." *Nordlinger*, 505 U.S. at 15. Rational basis review "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Heller v. Doe*, 509 U.S. 312, 319 (1993). Indeed, as the Second Circuit has observed, "[m]uch of what states do is to favor certain groups over others on economic grounds," and "[w]hether the results are wise or terrible is not for us to say, as favoritism of this sort is certainly rational in the constitutional sense." *Sensational Smiles, LLC v. Mullen*, 793 F.3d 281, 287 (2d Cir. 2015).

Applying this highly deferential standard, I conclude that there is clearly a rational basis for CHRO to allow business entities to proceed *pro se*, through their owner, while otherwise requiring representatives in its proceedings to be licensed counsel. As I previously held, "there can be no doubt that the CHRO has a rational basis for requiring that representatives in its proceedings are licensed counsel with authority to practice law." *Notz*, 438 F. Supp. 3d at 153

n.2. For these reasons, Notz has not alleged a plausible equal protection claim. Accordingly, I will grant defendants' motion for judgment on the pleadings on Notz's equal protection claim.

### Section 1983 and Title VII

Count Eight of Notz's amended complaint alleges the CHRO and Krich have violated 42 U.S.C. § 1983 by depriving her of a variety of "rights created by federal statutory, regulatory and state laws and regulations." Doc. #45 at 30. "The first inquiry in any § 1983 suit … is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker v. McCollan*, 443 U.S. 137, 140 (1979) (quoting 42 U.S.C. § 1983). "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (plurality opinion) (quotations omitted).

For the reasons explained above, Notz cannot sustain her constitutional due process or equal protection claims, and she has not identified any other federal statute or regulation that creates a right for non-attorneys to represent complainants in state CHRO proceedings. *See Notz*, 438 F. Supp. 3d at 153. As a result, she cannot maintain a claim under § 1983.

Notz also appears to allege in Count Eight and her opposition that defendants have violated her rights under Title VII of the Civil Rights Act of 1964. *See* Doc #45 at 30; Doc #63-1 at 9-15. But Title VII only provides recourse to plaintiffs in the context of an employment relationship, by making it "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). "Title VII thus requires a plaintiff asserting a discrimination claim to allege two elements: (1) the employer

13

discriminated against him (2) because of his race, color, religion, sex, or national origin." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015).

Notz conceded at oral argument that defendants are not her employer, so she cannot maintain a Title VII claim against them. Notz points to provisions that allow Title VII claims to be made "on behalf of" other individuals, but those provisions relate to the rights of those who have faced discrimination in an employment context; they do not create a separate cause of action for a non-employee third party against an administrative agency. *See* 42 U.S.C. § 2000e-5(b) & (e)(1).

Accordingly, Notz has not plausibly alleged that she suffered a violation of Title VII or another federal right that is actionable under § 1983. Therefore, I will grant defendants' motion for judgment on the pleadings on Count Eight of Notz's amended complaint.

### *State law claims*

The remaining counts of Notz's complaint all allege violations of state law. Because the state courts of Connecticut are best positioned to address Notz's claims of improper conduct by a state agency, I once again decline to exercise supplemental jurisdiction over these state law claims. *See* 28 U.S.C. § 1367(c)(3); *Lundy v. Catholic Health Sys. of Long Island Inc*., 711 F.3d 106, 117-18 (2d Cir. 2013). I will therefore dismiss Notz's remaining state law claims.

### CONCLUSION

For the reasons set forth above, the Court GRANTS defendants' motion for judgment on the pleadings on Counts Seven and Eight of plaintiff Notz's complaint (Doc. #58) on the ground that Notz has failed to state a claim upon which relief may be granted. The Court declines to exercise its discretion to consider Notz's state law claims and DISMISSES the remaining counts. Because Notz has already been afforded an opportunity to amend her complaint to address the

deficiencies in her federal claims and has been unable to do so, the dismissal of the federal

claims is with prejudice. But this ruling is without prejudice to Notz's filing of a complaint with

her state law claims for relief in the Connecticut Superior Court to the extent that state law

permits Notz to do so. The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 13th day of February 2021.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge